# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | | |
|---|---|---|
| JILL M CARBONI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:12-CV-167-TLS-RBC |
| | ) | |
| FORT WAYNE COMMUNITY | ) | |
| SCHOOL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on the Defendant, Fort Wayne Community School Corporation's, Motion for Summary Judgment [ECF No. 23] and Memorandum in Support [ECF No. 24] filed on February 28, 2014. The Plaintiff, Jill M. Carboni, filed a Response [ECF No. 25] on April 28, 2014, and the Defendant filed a Reply [ECF No. 27] on May 16, 2014. The Court notes that the Plaintiff also filed a Supplement [ECF No. 26] to her Response and the Defendant did the same [ECF No. 28] for its Reply. On May 21, 2014, the Plaintiff filed another Supplement [ECF No. 29] to her Response, which also contained a request that the Court strike the Defendant's Reply. That Supplemental filing also included a request to allow the Plaintiff to include a one page document containing Genuine Issues of Dispute that was not included in the Plaintiff's original Response brief. Subsequently the Plaintiff filed the same request independently [ECF No. 31] and the Defendant filed a Response [ECF No. 32] objecting to the Plaintiff's request. This Opinion and Order will resolve all these extraneous issues along with the summary judgment motion.

## PENDING MOTIONS OTHER THAN SUMMARY JUDGMENT

The Plaintiff failed to submit a "Statement of Genuine Disputes" in accordance with Local Rule 56-1(b)(2) as part of her brief and now is trying to cure that defect via two Motions

[ECF Nos. 29 & 31]. One of those Motions [ECF No. 29] also asks the Court to strike the Defendant's Reply brief as untimely. The Plaintiff was simply mistaken regarding the alleged untimeliness of the Defendant's Reply brief. Furthermore, the supplemental request to cure was not properly made, but the problem was cured in the later Motion [ECF No. 31]. Therefore, the Motion to Supplement and to Strike [ECF No. 29] is denied. The Court is concerned about the Plaintiff's attempt to file an untimely supplement that should have been included in the Response brief. Furthermore, the Defendant has legitimate concerns about their ability to respond to the alleged "Statement of Genuine Disputes." In a situation such as this, the Court would typically either deny the request or grant the request but give the Defendant an opportunity to file a sur-reply. In this case, however, the Court will grant the request to supplement [ECF No. 31], but a sur-reply is unnecessary because the Court is granting Summary Judgment for the Defendant.

## SUMMARY JUDGMENT STANDARD

The moving party bears the responsibility of informing the Court of the basis for summary judgment and identifying the pleadings, depositions, answers to interrogatories, and admissions, along with any affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The nonmoving party must go beyond the pleadings and designate specific facts that show there is a genuine issue for trial by her own affidavits or depositions, answers to interrogatories, and any admissions on file. *Celotex*, 477 U.S. at 324. When reviewing evidence to determine if there is a genuine issue as to a material fact, the court should draw all reasonable inferences in favor of the nonmoving party. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009).

The judge's role in summary judgment is to determine whether there is a genuine issue for trial, not to weigh the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the nonmoving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994).

There is no separate rule of civil procedure governing summary judgment in employment discrimination cases. *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1396 (7th Cir. 1997) (noting, however, that issues of intent, such as in discrimination cases, are often critical issues that are genuinely contestable). Summary judgment in favor of the defendant is hardly unknown, or for that matter rare, in employment discrimination cases. *Id.*

## STATEMENT OF FACTS

The following facts are supported by citations to admissible materials in the record:

The Plaintiff, Jill M. Carboni, is a teacher in the Fort Wayne Community Schools (FWCS) district and was hired in August 2001 as a high school science teacher. During the 2008–2009 school year, the Plaintiff completed the Aspiring Leaders Academy (Academy), which is an administrator intern program of FWCS. The prerequisites for applying to be an FWCS administrator include having a school administrator's license and either previous administrator experience or successful completion of the Academy. Upon completion of the Academy program, the Plaintiff satisfied the prerequisites to apply for administrator positions at FWCS.

The Plaintiff did her Academy internship at Shawnee Middle School—her mentor during the internship was Shawnee Principal, Matt Scheibel. The Plaintiff states that Scheibel repeatedly engaged in inappropriate and unprofessional behavior. Scheibel would intentionally pass gas in the presence of office staff. In fact, his conduct was more direct. He would approach a coworker, yell "spider," raise his leg, and pass gas directly at the coworker. Additionally, he made jokes about people being fat (particularly women) and constantly used the word "fuck" in and around the office. The Plaintiff did not file a complaint about Scheibel during her internship and at the end of her internship Scheibel gave the Plaintiff a positive review—she received marks of "outstanding" and "successful" in a number of categories.

Following her internship, the Plaintiff applied for a number of administrative positions at different schools within FWCS. In her Response brief, the Plaintiff limited the scope of her arguments to two specific incidents. Those incidents involve the Plaintiff's application for Assistant Principal positions at two schools—Snider and Elmhurst—for which she did not receive a request to interview. In fact, the positions were only posted for four days. After four days the Assistant Principal positions were eliminated and the funding was used to hire Academy interns at those schools instead. The two interns hired, John Houser and Barry Schrock, were male. Both men signed administrative internship contracts and were approved by the school board as interns.

FWCS reestablished the Assistant Principal positions at Snider and Elmhurst for the 2010–2011 school year and those positions were included in a general interviewing process for all open FWCS administrative positions. The Plaintiff applied and interviewed, as did Houser and Schrock. FWCS has a policy that allows potential candidates to apply when jobs are posted

if they are expected to have completed the prerequisites by the time of the position start date. In this case, Houser and Schrock were permitted to apply for the positions because, if hired, their internships would be completed before they would assume their new positions. The Plaintiff was not hired through the general interview process. Houser and Schrock were hired. The Plaintiff only scored nine and a half points on the interview process, which was the lowest among all the candidates.

In the 2009–2010 school year, the Plaintiff was laid off as part of a district wide reduction in force. The list of teachers to be laid off was worked out between school district officials and representatives of the teacher's union. When the district was able to bring her back, she was placed at a different school, Memorial Park Middle School. The Plaintiff was assigned a small classroom at Memorial Park in the lower level of the school that was not a science laboratory. The Plaintiff asked the Principal, Tim Rayl, if she could switch rooms. Rayl informed her that she could only do so if one of the other teachers agreed to switch. In the fall of the 2011–2012 school year, the Assistant Principal at Memorial Park resigned and the position was posted in January 2012. The Plaintiff applied, but was not chosen for an interview. The Plaintiff states that when she asked Rayl why she did not get an interview he told her that because of the lawsuit he did not think that she wanted the job. In his deposition, Rayl said that he chose not to interview the Plaintiff because he had supervised her for the past year and a half and he already knew she did not share his educational philosophy.

The Plaintiff filed a Charge of Discrimination with the City of Fort Wayne Metro Human Relations Commission on November 17, 2010. She alleged sexual harassment against Scheibel and sex discrimination against FWCS for refusing to hire her for administrative positions for

which she applied and for hiring males less qualified than she. The Plaintiff also claimed

retaliation on the grounds that she was denied interviews for positions after she retained an

attorney. The Plaintiff then filed her lawsuit in this Court on May 24, 2012.


# ANALYSIS

## A.        Sexual Harassment/Hostile Work Environment

The Plaintiff's lawsuit invokes Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e, *et seq.* An employer violates Title VII if it is responsible for a hostile work environment.

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Cooper-Schut v. Visteon Auto. Sys.*, 361

F.3d 421, 426 (7th Cir. 2004). "'Title VII affords employees the right to work in an environment

free from discriminatory intimidation, ridicule, and insult.'" *Johnson v. City of Fort Wayne*, 91

F.3d 922, 938 (7th Cir. 1996) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65

(1986)). To avoid summary judgment on a hostile work environment claim, a plaintiff must

provide sufficient evidence to create a genuine issue of material fact as to four elements: (1)

whether the work environment was both subjectively and objectively offensive; (2) whether the

plaintiff's gender was the cause of the harassment; (3) whether the conduct was severe or

pervasive; and (4) whether there was a basis for employer liability. *Chaib v. Indiana*, 744 F.3d

974, 985 (7th Cir. 2014); *see also Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 693 (7th Cir.

2001) (stating that, for purposes of summary judgment, the court "must decide whether a

reasonable trier of fact could find that plaintiff was harassed, that she was harassed because of

her sex, and that the conduct was severe or pervasive enough to create a subjectively and

objectively hostile work environment").

The Plaintiff's hostile work environment claim does not survive summary judgment because she has not presented evidence that her gender was the cause of the harassment, or that it was sufficiently severe or pervasive enough to create an objectively hostile work environment.

The Plaintiff's hostile work environment claims focus on three specific allegations against Scheibel, who was the principal and the Plaintiff's mentor at Shawnee Middle School. Although the parties debate whether or not Scheibel should be considered to have been the Plaintiff's supervisor during her internship, the Court need not reach that issue as the matter can be resolved on other grounds. That dispute is therefore immaterial. Specifically, the Plaintiff alleges that Scheibel engaged in the following misconduct: (1) regularly used the word "fuck" in the presence of office staff (Pl.'s Answer to Interrog. No. 8, ECF No. 23-8; Aff. of Carboni ¶ 25, ECF No. 26-1); (2) intentionally passed gas in the presence of office staff (Pl.'s Answer to Interrog. No. 8; Aff. of Carboni ¶ 26); and (3) made fun of the weight of one of the Plaintiff's coworkers (Pl.'s Answer to Interrog. No. 8; Aff. of Carboni ¶ 27); and (4) generally ridiculed people about their weight and appearance (Aff. of Carboni ¶ 28).

As is clear from the Plaintiff's allegations, many of the complaints about Scheibel's behavior lack any sexual or gender component, character, or overtones, and the Plaintiff makes no attempt to explain how these actions were directed at her because of her gender. *See Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999) (stating that complained of conduct in a Title VII case must have a sexual character or purpose). Additionally, much of Scheibel's conduct was directed at both male and female employees. Because Title VII only prohibits "discrimination" because of sex, "inappropriate conduct that is inflicted on both sexes, or is inflicted regardless of sex, is outside the statute's ambit." *Holman v. Indiana*, 211 F.3d 399,

403 (7th Cir. 2000). "Title VII does not cover the 'equal opportunity' . . . harasser, then, because such a person is not *discriminating* on the basis of sex. He is not treating one sex better (or worse) than the other; he is treating both sexes the same (albeit badly)." *Id.*; *see also Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 976 (7th Cir. 2004) (plaintiff did not establish a genuine issue of material fact on whether she was harassed because of her gender where her superiors' vulgar language showed them to be crude individuals who treated everyone poorly, including men). The Plaintiff also complains about conduct directed at coworkers in her presence. Such complaints carry less weight that complaints about conduct directed at the individual complaining. *See McKenzie v. Milwaukee Cnty.*, 381 F.3d 619, 624 (7th Cir. 2004) (recognizing that the impact of harassment directed at others is not as great as harassment directed at the individual).

The only potential gender component to the Plaintiff's claims involve the Plaintiff's characterization of "fat jokes" Scheibel made as "fat woman jokes." (Dep. of Carboni, pg. 71:5). Again, these "fat jokes" were focused primarily on coworkers of the Plaintiff, and not on the Plaintiff herself. Despite that characterization, the Plaintiff has not provided any evidence that Scheibel harassed her because of her gender. If anything, his misconduct was focused on weight, not gender. The Plaintiff's brief sums up her allegations as follows:

> it was humiliating by its nature. Even observing a supervisor approach an employee in an office setting and intentionally pass gas directly on or near them is a humiliating event to witness [citation omitted]; not to mention the fact that Mr. Scheibel continually made Ms. Carboni feel uncomfortable about her weight.

(Pl.'s Br. at 4–5, ECF No. 25.) Accepting all this as true, there still does not exist a Title VII violation. The Plaintiff's argument misunderstands the law as it relates to the evidence in this case and the protections guaranteed by Title VII, which only prohibits harassment because of a

protected characteristic—in this case, sex. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). Thus, the Court finds that the Plaintiff has not provided evidence that her gender was the cause of the alleged harassment.

Finally, even if the Court found that the Plaintiff was harassed because of her gender, she still must show that the conduct was severe or pervasive. The Plaintiff received a positive review at the conclusion of her internship and stated in her deposition that she performed her job well. (Dep. of Scheibel Exhibit on pg. 4, ECF No. 23-2; Dep. of Carboni pg. 74:22–25 & pg. 75:1–3). There simply is no evidence that the conduct the Plaintiff has identified unreasonably interfered with her work performance or detracted from her ability to perform her job. *See Jackson v. Cnty. of Racine*, 474 F.3d 493, 499 (7th Cir. 2007) (noting that the key question in the severe or pervasive inquiry is whether the conduct was so severe or pervasive that it altered the conditions of the employment). The conduct the Plaintiff complains of was certainly inappropriate, disgusting, unprofessional, and unpleasant, but Title VII is not a code of "general civility." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Thus, the Court finds that the Plaintiff's claims of alleged harassment fail as a matter of law due to her failure to meet the severity or pervasiveness standard.

Because the alleged harassment was not directed at the Plaintiff because of her gender and was not severe or pervasive, the Plaintiff's sexual harassment/hostile work environment claim fails as a matter of law.

**B.      Discrimination Based on Sex**

In its Brief in Support of its Motion for Summary Judgment, FWCS analyzed each and every job the Plaintiff applied for and provided reasons for why she was not hired. In her

Response, the Plaintiff limited her argument to two specific positions over the course of two years, which effectively waived any argument on the other positions. (Pl.'s Br. at 5, ECF No. 25.) Therefore, the Court need only address the two positions over two years for which the Plaintiff presents arguments in her Response.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment" on the basis the individual's sex. 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove her discrimination case under the direct method or indirect method of proof. *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). The Court will, as both the Defendant and the Plaintiff have done in their summary judgment briefs, analyze the Plaintiff's claims under the indirect burden-shifting method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this method, which provides a means of evaluating indirect evidence of discrimination at the summary judgment stage, *Oest v. Ill. Dept. of Corrs.*, 240 F.3d 605, 612 (7th Cir. 2001), a plaintiff must first establish a prima facie case of discrimination by showing that: "(1) she is a member of a protected class, (2) her job performance met [the employer's] legitimate expectations, (3) she suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff," *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 750–51 (7th Cir. 2006). If the prima facie case is established, it triggers a presumption of discrimination and the burden then shifts "to the employer to articulate some legitimate, nondiscriminatory reason" for its action. *McDonnell Douglas*, 411 U.S. at 802; *Burks*, 464 F.3d at 751. When the employer does so, the burden shifts back to the plaintiff, who must

present evidence that the stated reason is a "pretext," which in turn permits an inference of unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 804; *Burks*, 464 F.3d at 751.

The first three elements of the Plaintiff's prima facie case via indirect evidence are not disputed. She is a female; she was qualified for the two administrative positions for which she applied; and she was not hired, which is an adverse employment action. The Plaintiff's argument focuses on the same two positions in two different years. First, she alleges that two unqualified males were hired for the Assistant Principal positions at Elmhurst and Snider for the 2009–2010 school year. Those two Assistant Principal positions, however, were only posted for four days and then those job postings expired and were cancelled. Instead of hiring Assistant Principals, FWCS decided to eliminate those positions and use the funding to hire administrative interns instead, as the typical funding source for interns was depleted. For those intern positions they hired John Houser and Barry Schrock. So despite the Plaintiff's assertion, the Assistant Principal positions were not "left open" during the 2009–2010 school year. Instead, the positions were eliminated and interns were hired. The Plaintiff seems to be arguing that even though Houser and Schrock were hired as interns, they effectively filled the roles of Assistant Principals. (*See* Aff. of Carboni ¶¶ 11–22). However, both men signed intern contracts (Supplemental Aff. Kathy Carr, exhibits "2" & "3," ECF No. 28-1), considered themselves interns (Dep. of Houser pg. 8:2–7; Dep. Of Schrock, pg. 23:8–14), and were approved by the FWCS board as interns (Supplemental Aff. of Kathy Carr, Exhibit "1," ECF No. 28-1). With the position she applied for eliminated, the Plaintiff has no evidence to support a claim that the Defendant treated her differently than any other applicant for the position. The record does not create an inference that the Defendant refused to hire the Plaintiff because she is a woman.

11

As for Assistant Principal positions at Elmhurst and Snider for the 2010–2011 school year, FWCS has presented a legitimate, nondiscriminatory explanation for why the Plaintiff was not hired. According to FWCS, in each position the Plaintiff applied for, "more qualified male or female applicants, who either had prior experience as administrators and/or who interviewed better than Carboni, were hired." (Def.'s Br. at 19, ECF No. 24.) Specifically, during the interview process for the 2010–2011 school year the Plaintiff interviewed poorly. She scored nine and a half points—the lowest of any candidate. The Defendant, therefore, has provided legitimate, nondiscriminatory reasons for its employment decision—namely, that the Plaintiff simply interviewed poorly and other candidates were better suited for the position. Because FWCS has presented a legitimate, nondiscriminatory reason for its conduct, the burden again shifts to the Plaintiff to show that these reasons are pretextual.

To show pretext, a plaintiff must show that "(a) the employer's nondiscriminatory reason was dishonest; and (b) the employer's true reason was based on a discriminatory intent." *Perez v. Illinois*, 488 F.3d 773, 777 (7th Cir. 2007) (quoting *E.E.O.C. v. Target Corp.,* 460 F.3d 946, 960 (7th Cir. 2006) (citations omitted)). When direct evidence of pretext is lacking, the Plaintiff must show that the employer's reason is not credible or is factually baseless. *Id.* Additionally, the Plaintiff must present evidence of at least an inference that the real reason for an adverse employment action was discriminatory. *Id.* at 778. Finally, the "question in a discrimination case is not whether the employer's stated nondiscriminatory ground for the action of which the plaintiff is complaining is correct but whether it is the true ground of the employer's action rather than being a pretext for a decision based on some other, undisclosed ground." *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006).

The Plaintiff cited the proper legal standard for analyzing this issue (including the burden shifting and a required showing of pretext), the Defendant provided a detailed analysis of pretext in its Brief and argued that the Plaintiff offers no evidence showing pretext, yet the Plaintiff still failed to clearly set forth evidence, direct or indirect, that the Defendant's nondiscriminatory explanations were pretextual. The Plaintiff's only potential pretext argument stems from the fact that Houser and Schrock were allowed to apply for Assistant Principal positions for the 2010–2011 school year prior to completing their internships.

The Plaintiff specifically argues that Houser and Schrock were not qualified to apply for the positions because they had not completed their internships and that allowing them to apply was improper. Thus, the Plaintiff seems to be arguing that this is evidence that the Defendant's nondiscriminatory reasons were pretextual. FWCS designated evidence, however, showing that allowing Houser and Schrock to apply complied with an FWCS policy that allows job applicants to apply for positions if it is expected the applicant will have met all the requirements by the time the candidate would start the position. (Supplemental Aff. of Kathy Carr ¶ 8.) Houser and Schrock had technically not completed the internship program when the Assistant Principal positions were posted. But because they were expected to complete the internships that year, they were permitted to apply for the positions that would begin the following year. According to this policy, allowing Houser and Schrock to apply for the positions was proper. Therefore, this is no evidence of pretext and the Defendant is entitled to judgment as a matter of law on the Plaintiff's sex discrimination claim.

**C.      Retaliation Claim**

Retaliation in violation of Title VII may be established on summary judgment through either the direct or indirect methods of proof. *Weber v. Univs. Research Ass'n, Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). Although the Plaintiff does not specifically identify which method she is using, there appears to be no direct evidence of retaliation. Thus, the Court analyzes this case using the indirect method.

To establish a prima facie case of retaliation using the indirect method, the Plaintiff must show that she: (1) opposed an unlawful employment practice; (2) was the object of an adverse employment action; and (3) that the adverse employment action was caused by her opposition to the unlawful employment practice. *Cullom v. Brown*, 209 F.3d 1035, 1040 (7th Cir. 2000). While FWCS concedes that the Plaintiff satisfies the first two elements, it argues that she has presented no evidence of but-for causation. If the Plaintiff does establish a prima facie case of retaliation using the indirect method, then the burden shifts to the Defendant to proffer a nonretaliatory reason for its conduct. *Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008). Once such an explanation is proffered, the burden shifts back to the Plaintiff to show that the proffered reason is pretextual. *Id.* In this case the evidence related to but-for causation and the evidence related to pretext overlap significantly. Additionally, the Plaintiff has not presented her case in a way that strictly follows the burden shifting procedure. In this case, the Plaintiff's ability to demonstrate but-for causation in relation to her claim about not being interviewed is dependent on her ability to show that the Defendant's legitimate, nonretaliatory explanation for not interviewing the Plaintiff is pretextual. Therefore, the Plaintiff in this case must present evidence of pretext to satisfy the but-for causation requirement. The two issues rise or fall together.

The Plaintiff alleges that a number of retaliatory actions were taken against her. For

instance, she claims the she was

> laid-off contrary to the terms of the negotiated contract between the teacher's union and the school; placed at another middle school as a result; assigned an inferior workspace which was not conducive to teaching the required curriculum; and advised by Mr. Rayl that he did not even consider her application for the position as his Assistant principal as a direct result of her discrimination charge.

(Pl.'s Resp. at 8, ECF No. 25.) The Plaintiff's claims have a timing problem. She was laid off as part of a reduction in force during the 2009–2010 school year. (Aff. of Carboni, ¶ 29.) But her EEOC Charge was filed on November 17, 2010, which is during the 2010–2011 school year. (Pl.'s Compl., Ex. A.) Therefore, the lay-off could not have been caused by the filing of the EEOC claim. At one point the Plaintiff suggests that she was retaliated against after hiring a lawyer. Besides the fact that there is no evidence of this, the selection of which teachers were chosen for lay-off was a joint decision between FWCS and representatives of the teachers' union. (Dep. of Cammack, pg. 26:9–5; 27: 1–6.) After the lay off, the Plaintiff was placed at Memorial Park Middle School for the 2010–2011 school year. Her argument that this placement was retaliatory is predicated on the acceptance of her argument regarding her lay-off, which has been shown to be unsubstantiated.

Next the Plaintiff contends that she was retaliated against when the Principal at Memorial Park Middle School put her in a classroom in the basement that she says was not conducive to teaching science. Once again, the Plaintiff faces a time line problem. Her EEOC Complaint was filed on November 17, 2010, but she started at Memorial Park at the beginning of the 2010–2011 school year. Her classroom placement was determined prior to the start of the school year and, thus, prior to the filing of her EEOC charge. Even without the time line problem, the Plaintiff has not presented any evidence, and speculation is not evidence, that her classroom placement was

retaliatory. Plaintiff did ask if she could move classrooms the following year (after her EEOC

charge had been filed) because a classroom had become vacant. The Principal, Tim Rayl,

decided he wanted the newly hired teacher to have the vacant classroom because he wanted the

new teacher to be next to a particular teacher. (Dep. of Rayl, Ex. 1.) Rayl did tell Plaintiff that

she could try to get one of the other teachers to volunteer to trade classrooms. (*Id.*) Once again,

the Plaintiff does not present any evidence that the filing of her EEOC charge caused her

classroom placement or impacted Rayl's decision to place the newly hired teacher in the vacant

classroom.

The Plaintiff's final claim of retaliation involves the fact that she was not selected for an

interview for an open Assistant Principal position at Memorial Middle School during the fall

semester of the 2011–2012 school year. The only evidence the Plaintiff points to in support of

this is her own statement made in an affidavit [ECF No. 26-1] filed at the same time as her

Response to the Defendant's Motion for Summary Judgment. During the discovery period in this

case, depositions were taken of potential witnesses. The Plaintiff took the deposition of Rayl. In

the deposition, the following exchange occurred:

Q:      Isn't it true that you had told Jill Carboni that you didn't consider her application
        because she had filed a lawsuit?

A:      No. I did not say that.

Q:      You never told her that?

A:      No.

Q:      Did you interview her?

A:      No.

Q:      Why not?

A:      Jill did not have the same philosophy that I had.

Q:      In what regards specifically?

A:      Specifically, we were initiating that year, learning goals that teachers were to write outside their classroom. She had a lot of frustration with that and expressed her frustration during collaboration meetings. She didn't feel that students were able to learn some of the science concepts that are required of them by the State and felt that developmentally their brain is not ready to take on some of the abstract challenges with that. I need to have my second in command, somebody who believes that we can get those things done.

(Dep. of Rayl, pg. 47:9–25; pg. 48:1–4.) The following exchange also occurred in the deposition:

Q:      What did you speak with her about after the interviews then?

A:      What I had just shared with you. That we did not see eye to eye.

(*Id.* at pg. 49:18–23.) The Plaintiff was deposed on June 21, 2013, but has not designated any portions of her deposition on this issue. Instead, when filing her Response to the Defendant's Motion for Summary Judgment, the Plaintiff also filed a supplemental designation of evidence that contained her own Affidavit. Here is what the Plaintiff claims about this incident in her affidavit:

I applied for the open position, and did not get the opportunity to interview. My Principal, Mr. Rayl, chose a male applicant to fill the position. Thereafter, I asked Mr. Rayl why he had not even interviewed me as an applicant. He replied that: "Because of the lawsuit, he did not think that I wanted the job" I then asked him if he had reviewed any of the information in my application, including the letters of recommendation from my previous administrators, and he replied that he had not even read my application or the attached information. I believe the treatment I have received at Memorial Park from Mr. Rayl is in retaliation for the fact that I filed the EEOC discrimination charge, which Mr. Rayl admitted knowing about, but did not explain why he had such knowledge.

(Aff. of Carboni ¶ 30.) Again, the Plaintiff did not make this statement in her deposition—she only made it later in an affidavit. Additionally, the Plaintiff misleadingly uses quotation marks around what she claims Rayl said to her but then proceeds to speak in her own voice, making it

clear that it is not a quotation.[1] The Plaintiff did not designate any portion of her deposition in support of her Response to the Defendant's Motion for Summary Judgment. Her affidavit was filed after the close of discovery—and thus after taking Rayl's deposition—and the statements in her affidavit were obviously not subject to questions from opposing counsel as they would have been during a deposition. Additionally, she claims that Rayl noted the lawsuit as his reason for thinking that she did not want the job. However, her lawsuit was not filed until May 2012 and the position at issue was posted and hired for prior to that time period. The Plaintiff has conflated the issues of the EEOC charge and the filing of the lawsuit, which leads to some confusion regarding precisely what she claims Rayl said. Perhaps when she claims that Rayl said "lawsuit" he actually meant EEOC Complaint, but again the presentation of this information is confusing as it seems to conflate the two events.

Regardless, the Seventh Circuit has been "highly critical" of efforts to patch up a party's deposition with his or her own subsequent affidavit. *Russell v. Acme-Evans Co.*, 51 F.3d 64, 67 (7th Cir. 1995) (internal citations omitted). "Almost all affidavits submitted in litigation are drafted by the lawyers rather than by the affiants." *Id.* Furthermore, "when challenges to witness' credibility are all that a plaintiff relies on, and he has shown no independent facts–no proof–to support his claims, summary judgment in favor of the defendant is proper. *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Here, the Plaintiff's affidavit appears to be an attempt to patch up a hole in her deposition. Rayl stated in his deposition that he did not

---

[1] When stating what Rayl allegedly said to her, the Plaintiff wrote: ". . . he did not think I. . . ." Rayl would not have said "he did not think I. . . ." If Rayl had actually said something to this effect, he would have said something like: "I did not think you wanted the job . . . ." Perhaps the Plaintiff was just paraphrasing or explaining what she alleges Rayl said to her, but the use of quotation marks was inappropriate.

interview the Plaintiff because of a philosophical difference. The Court is highly skeptical of the Plaintiff's effort to avoid summary judgment merely by casting doubt about the credibility of Rayl through an affidavit filed after his deposition.

Even accepting the claims made in the Plaintiff's affidavit, the analysis is not complete. The Defendant has offered a nonretaliatory reason for not interviewing the Plaintiff—namely, Rayl's statement that he knew of the Plaintiff's teaching philosophy and it significantly differed from his own philosophy. It is important to note first that the Plaintiff does not deny that Rayl told her that he did not interview her because they had a difference in philosophy. In her affidavit, the Plaintiff claims that Rayl told her that he did not interview her because he did not think she wanted the job and that he thought this because she had filed the lawsuit. Therefore, the record before the Court shows two reasons offered by Rayl regarding why he did not interview the Plaintiff. It is not uncommon that an employer has more than one reason and proffers more than one reason for any given action. *See, e.g., Russell v. Acme-Evans Co.*, 51 F.3d 64, 69 (7th Cir. 1995) (analyzing proffered nonretaliatory reasons separately). Rayl denies telling the Plaintiff that the lawsuit was the reason. That fact is disputed. But a disputed fact must also be material for a nonmoving party to survive summary judgment.

The statement that Rayl did not think the Plaintiff wanted the job because of the lawsuit is not necessarily retaliatory on its face. He may have actually believed that she had implicitly withdrawn her application. But at the summary judgment stage the Court makes all reasonable inferences in favor of the nonmoving party. Thus, the Court can and does infer that such a reason by itself would create a triable issue of fact related to the retaliation claim. However, the "defendant has offered several independent reasons" for the challenged actions and "[t]he fact

19

that some of these reasons were successfully called into question by [the Plaintiff's] deposition or affidavit does not defeat summary judgment if at least one reason for each of the actions stands unquestioned." *Id.* The Plaintiff has not denied or called into question Rayl's statement during his deposition that he did not interview the Plaintiff because he knew her teaching philosophy, he knew it differed from his significantly, and he needs a second in command that he works with directly to believe in his plan for the school. (Dep. of Rayl, pg. 47:9–25; pg. 48:1–4.) This reason is a legitimate, nonretaliatory reason that has not been called into question. Thus, even if Rayl thought that the Plaintiff did not want the job because of the lawsuit, it is clear that she would not have been hired anyway because of their difference in philosophy. Because the Plaintiff has not provided evidence that the Defendant's legitimate, nonretaliatory explanation was pretextual, her retaliation claim fails as a matter of law. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013) (holding that "Title VII retaliation claims must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer").

D.      **Statement of Genuine Disputes**

Local Rule 56-1(b)(2) requires that after a Motion for Summary Judgment is filed, a Response Brief or Appendix must include a section labeled "Statement of Genuine Disputes" that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary. This local rule supplements Federal Rule of Civil Procedure 56, which provides that a Court "shall grant summary judgment if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Plaintiff did not file the Statement of Genuine Disputes with her Response brief as required by the local rule. She filed it later and asked the Court to accept the late filing. The Defendant objected. Typically if the Court were going to grant a late filing, it would give the Defendant the opportunity to respond. However, after reviewing the entire record before the Court and the late filing, the Court accepts the Plaintiff's late filing and finds that a response from the Defendant is unnecessary.

As has been made clear in the analysis above, the Court finds that there are no genuine issues of material fact and the Defendant is entitled to judgment as a matter of law. The "disputes" listed by the Plaintiff in her late filing are all either not factual disputes, not disputes at all, or are immaterial. The Plaintiff's first statement involves the question of whether Matt Scheibel was the Plaintiff's supervisor during her time as an intern at Shawnee. This issue may be disputed but it is immaterial because the Plaintiff can not satisfy the other elements of her sexual harassment claim. Second, the Plaintiff simply states that it is disputed whether Scheibel sexually harassed the Plaintiff and/or created a hostile work environment. Of course this is disputed, as it is the legal question before the Court. It is not a dispute of fact, but is purely a question of law. Third, the Plaintiff states that it is disputed whether Rayl not considering the Plaintiff's application constituted retaliatory conduct. Whether his conduct constituted retaliatory conduct is purely a matter of law for the Court to decide.[2] Finally, the Plaintiff's fourth and fifth points involve a rehash of the purely legal questions before the Court regarding her retaliation

---

[2]Although not properly stated, the Court notes that the Plaintiff may be implicitly arguing that whether Rayl told the Plaintiff he didn't consider her application because of her EEOC filing is a disputed material fact. That fact is disputed in the record, but is ultimately immaterial because the Plaintiff failed to establish any evidence that Rayl's nonretaliatory reason of a difference in philosophy was pretextual.

and sex discrimination claims.

The Plaintiff has not raised any genuine issues of material fact in her untimely filing, thus, a response was not necessary from the Defendant.

**CONCLUSION**

For the reasons stated above, the Motion to Permit Compliance and Strike Defendant's Reply [ECF No. 29] is DENIED. The Motion to Permit Plaintiff to Comply With Local Rule 56-1(b)(2) [ECF No. 31] is GRANTED and those additional materials were reviewed and considered by the Court. The Defendant's Motion for Summary Judgment [ECF No. 23] is GRANTED.  The Clerk will enter judgment in favor of the Defendant and against the Plaintiff.

SO ORDERED on September 15, 2014.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION